IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GREEN PLAINS TRADE GROUP LLC, et al., | |
| Plaintiffs, | 8:21CV418 |
| vs. | ORDER |
| ARCHER DANIELS MIDLAND COMPANY, | |
| Defendant. | |

This matter is before the Court on the Motion to Transfer Venue of Plaintiffs' Complaint under 28 U.S.C. § 1404(a) (Filing No. 74) filed by Defendant, Archer Daniels Midland Company (ADM). For the following reasons, the Court will again grant ADM's motion to transfer this case to the United States District Court, Central District of Illinois.

**BACKGROUND**

This is the second lawsuit filed in this court by the above-captioned plaintiffs (collectively, "Green Plains") against ADM arising out of ADM's alleged price manipulation of ethanol at the Kinder Argo Terminal in Argo, Illinois. See *Green Plains Trade Grp. LLC et al. v. Archer Daniels Midland Co.* Case No. 8:20CV279 (D. Neb. July 14, 2020). Green Plains' claim in the instant lawsuit arises out of the same facts alleged in the prior lawsuit.

Green Plains produces and sells ethanol. Green Plains Inc. ("GPRE") is an Iowa corporation with its principal place of business in Omaha, Nebraska, and owns fifteen single-member LLCs that operate bioprocessing plants in Nebraska, Iowa, Minnesota, Texas, Indiana, Illinois, Virginia, and Tennessee. Green Plains Trade Group LLC, ("Green Plains Trade), is a Delaware LLC and subsidiary of GPRE that markets and sells ethanol to third parties on behalf of the single-member bioprocessing LLCs.

ADM is a Delaware corporation headquartered in Chicago, Illinois, and is a major producer and seller of ethanol throughout the United States, including at the Kinder Morgan Argo Terminal in Argo, Illinois ("Argo Terminal"). Argo Terminal price assessments are commonly used to determine the fair market value of ethanol. Pricing services such as the S&P Global Platts ("Platts") and the Oil Price Information Service ("OPIS"), provide benchmark price assessments that reflect

the daily trading price of ethanol. One of the price assessments compiled by Platts at the Argo Terminal is the benchmark Chicago Ethanol (Terminal) price, or "Chicago Benchmark Price," calculated every trading day during the Market-on-Close ("MOC") window. Green Plains alleges that beginning in November 2017, ADM began manipulating price falls of ethanol at the Argo Terminal so ADM would earn larger profits on its derivatives contracts, which increased in value with ethanol price decreases at the Argo Terminal. Green Plains alleges ADM did this by flooding the Argo Terminal with ethanol and then quickly lowering offers or accepting low bids as the dominant seller in the MOC pricing window.

In the prior case, Green Plains filed a putative class action complaint against ADM on July 14, 2020, alleging claims under the Commodity Exchange Act ("CEA") and a state law claim for tortious interference with Green Plains' contractual relationships that were tied to OPIS, Platts, the Chicago Benchmark, and other pricing benchmarks impacted by ADM's alleged price manipulation. See Filing No. 1 in Case No. 8:20cv279. Green Plains sought to represent and certify a class of ethanol sellers who relied on those benchmarks and were damaged by ADM's alleged price manipulation activity. On November 6, 2020, this court granted ADM's motion to transfer the case to the Central District of Illinois, where three other cases were pending against ADM arising out of the same alleged ethanol price manipulation scheme. All four related cases were assigned to the same district judge and magistrate judge in the Central District of Illinois, and, following the transfer, the parties engaged in eight months of motion practice and discovery pursuant to a joint stipulation and order that coordinated discovery. (Filing No. 76-7). On August 16, 2021, the Illinois court granted ADM's motion to dismiss Green Plains' claims under the CEA for failure to state a claim and declined to exercise supplemental jurisdiction over the remaining state law tortious interference with contract claim, dismissing the latter without prejudice. (Filing No. 76-8). Although Green Plains' complaint had invoked both federal question jurisdiction and class diversity jurisdiction under 28 U.S.C. § 1332(d), the Illinois court did not address whether it still had diversity jurisdiction over the state law claim after dismissing the CEA claim. Green Plains then filed this action on October 26, 2021, invoking the court's diversity jurisdiction over a single claim for tortious interference with contract under Nebraska law. (Filing No. 1). On November 16, 2021, ADM filed a "Motion to Continue Jurisdiction" in the Illinois action, requesting that the Illinois court continue exercising jurisdiction over the same state law claim it

2

had dismissed in its August 16, 2021, order. Green Plains responded by filing a Notice of Voluntary Dismissal of their state law claim in the Illinois court. (Filing No. 76-9).

ADM has once again filed a motion to transfer this case to the Central District of Illinois, arguing the same reasons underlying the prior case's transfer are applicable to the instant case.[1]. Green Plains opposes transfer, asserting the reasons for the prior transfer no longer apply. (Filing No. 79).

## ANALYSIS

ADM again moves the court to transfer this case to the Central District of Illinois pursuant to 28 U.S.C. § 1404(a), which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Eighth Circuit has not provided an "exhaustive list of specific factors to consider" when determining whether to transfer a case under § 1404(a), but district courts should weigh any "case-specific factors" relevant to convenience and fairness to determine whether transfer is warranted. *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)). Factors the court can consider when balancing the convenience of the parties and witnesses include witnesses' willingness to appear, the ability to subpoena witnesses, adequacy of deposition testimony, accessibility to records and documents, the location where the conduct complained of occurred, and the applicability of each forum state's substantive law. See *id*. Factors the court can consider when considering the interest of justice include judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law. See *id.* Courts have broad discretion in determining whether to transfer a case under § 1404(a). See *id.*

Section 1404(a) only permits transfer of a case to another forum "where it might have been brought," meaning, the plaintiff must have been able to file in the transferee court in the first instance. See *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). The transferee court must therefore be a proper venue and have both personal and subject matter jurisdiction. See 15 C. Wright & A. Miller, Federal Practice and Procedure § 3845 (4th ed.) ("[C]ourts are uniform in requiring that the

---

[1] Alternatively, ADM seeks the case be dismissed with prejudice. (Filing No. 81 at p. 8).

transferee have personal jurisdiction over the defendant and constitute a proper venue [and] both the transferor and transferee must have subject matter jurisdiction over the case."). ADM is still the only named defendant. As this court previously observed, the Central District of Illinois is a proper venue and has personal jurisdiction over ADM because its North American headquarters is in Decatur, Illinois, and ADM's alleged wrongful conduct happened there.

The transferee court must also have subject matter jurisdiction. Previously, this court only identified federal question jurisdiction as the basis for subject matter jurisdiction and did not address Green Plains' additional invocation of class action diversity jurisdiction. See Filing No. 77 at p. 5 in Case No. 8:20cv279 ("Federal courts have exclusive jurisdiction over actions for violations of the CEA."). After transfer, the Illinois court dismissed Green Plains' claim under the CEA and declined to exercise supplemental jurisdiction over the remaining state law claim, without first considering whether it continued to have diversity jurisdiction over the state law claim. ADM contends the Illinois court erred in failing to consider whether it had diversity jurisdiction, and Green Plains implicitly agrees, as it has now refiled an identical state claim invoking the court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

"Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interest and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan v Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). Review of the complaint shows complete diversity between the parties, as ADM is a Delaware corporation with its headquarters in Illinois, and plaintiff GPRE is an Iowa corporation. The remaining plaintiffs are LLCs with GPRE as the sole member.

The amount in controversy is less clear, as Green Plains has not alleged a specific amount of damages, and neither party addresses the amount in controversy in their briefs. Where a plaintiff does not "allege a specific amount in controversy" in the complaint, "the amount in controversy depends upon the value of the relief [the plaintiff] seeks." *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 396 (8th Cir. 2011) (citing *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010)). The amount-in-controversy requirement may be satisfied even when "the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum." *Turntine v. Peterson*, 959 F.3d 873, 880 (8th Cir. 2020) (quoting *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003)). The court measures the amount in controversy "by the

value to the plaintiff of the right sought to be enforced" when the amount is in question. *Id.* (quoting *Am. Family Mut. Ins. v. Vein Ctrs. for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019)). When a complaint alleges the proper jurisdictional amount in good faith, it is sufficient to grant jurisdiction. *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002) (quoting *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir.1994) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). The complaint will be dismissed if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.*

Green Plains is seeking lost profits, diminished future earning capacity, reputational harm, impairment of business relationships, and consequential losses, for ADM's alleged tortious interference with Green Plains' contracts. Green Plains alleges that ADM's interference with futures contract prices over the course of nearly two years affects the price per gallon at which Green Plains sells ethanol, that one example of ADM's manipulation lowered the per gallon contract price by $0.18, and that one contract alone is for 42,000 gallons of ethanol. (Filing No. 1 at pp. 2, 4, 16). Green Plains also alleges it "routinely enters into contracts for the physical sale of ethanol in which the per-gallon price is set by reference to the Chicago Benchmark Price. . .." Green Plains sells about one billion gallons of ethanol per year. (Filing No. 1 at p. 14). A per gallon contract price drop of $0.18 on a 42,000-gallon contract equals a $ 7,560 price drop per contract in this one example. If Green Plains suffered an $0.18 per gallon reduced price on only ten contracts worth of ethanol, that is enough to exceed the $75,000 threshold. Another way to view the value of the relief sought by Green Plains is by noting that futures contract price increments, upon which physical sales prices are based, are measured in increments of $0.0001 (one-hundredth of one cent). (Filing No. 1 at pp. 16). A $0.0001 decrease in the per gallon price multiplied by 1 billion gallons sold per year is still $100,000 in lost profit from sale. Even taking a conservative view of the value of the relief sought by Green Plains, and based upon the limited information provided by Green Plains in the complaint, their allegations sufficiently satisfy the court that the amount in controversy is greater than $75,000. Therefore, this case "might have been brought" in the Central District of Illinois.

The next step is, again, to balance the case-specific factors relevant to convenience and justice to determine whether the present case should be transferred to the Central District of Illinois. As in the previous case, there is no question that judicial economy would best be served by the transfer. In the prior case, the factual basis for the putative class actions filed by Green Plains and

5

the other plaintiffs all arose out of ADM's alleged price manipulation at the Argo Terminal in Illinois. As noted previously, "the majority of Green Plains' complaint contains verbatim allegations as contained in the [other] complaints and includes the same graphics and charts." *Green Plains*, 2020 WL 6544289 at *4. In the previous case, Green Plains sought to differentiate its case, in part, based upon its additional claim for tortious interference with contracts. *Id.* As before, Green Plains' tortious interference claim arises entirely out of the same factual allegations which previously supported the putative class action claims, and which are the basis of the two other cases in the Central District of Illinois.

In the previous case, this court found "Green Plains' allegations of law and fact common to its proposed class are nearly identical to those presented" by the other complaints, such as "whether ADM manipulated Chicago Benchmark Prices or the prices of Chicago Ethanol Derivatives; whether ADM's conduct constitutes manipulation under the CEA; whether ADM's conduct was willful and intentional;" and more dealing with the issues of the putative class. *Id.* Although this lawsuit no longer contemplates a putative class action, a Green Plains' allegation of tortuous interference with contractual relations still arises from the same facts as the previous litigation between the parties and the ongoing litigation in Illinois.

Green Plains argues that the "first to file" factor in the previous case is no longer is relevant in the present case. Previously, the fact that another putative class action complaint had been filed alleging the same causes of action before the same district judge and magistrate judge, and that the present parties have already conducted some discovery there, weighed in favor of transferring the case. *Green Plains,* 2020 WL 6544289 at *4. Those related actions are still pending; many of the same witnesses and much of the same discovery will still be relevant in all the related actions even though Green Plains no longer alleges any class action claims. See 17 Moore's Federal Practice § 111.13[1][o]) ("Judicial economy is served by allowing related actions to proceed in the same district."); see also *Hoban v. United States Food & Drug Admin.*, No. CV 18-269 (JNE/LIB), 2018 WL 3122341, at *3 (D. Minn. June 26, 2018) (citing Ferens v. John Deere Co., 494 U.S. 516, 531 (1990) ("Without transfer here, multiple judges will consider the same questions, review the same record, read the same briefs, and write opinions resolving the same issues. Section '1404(a) was designed to prevent' this wastefulness.").

As before, Green Plains argues that considerable deference ought to be given to its choice of forum. Green Plains argues that because its current complaint is brought solely by Green Plains

and is not brought on behalf of nationwide plaintiffs as a class, the reasons for transferring the prior litigation do not apply to this case. Green Plains also argues that convenience to the plaintiffs in this case outweigh any other considerations. Green Plains is correct that federal courts generally give considerable deference to a plaintiff's choice of forum. See *In re Apple*, 602 F.3d at 913 (8th Cir. 2010). The fact that Green Plains currently alleges one state law claim under Nebraska law may mean that its choice of forum is given more weight than before. However, as noted previously, a plaintiff's choice of forum "is given substantially less weight if 'operative events' giving rise to the lawsuit took place in a forum other than that chosen by the plaintiff." *Green Plains*, 2020 WL 6544289 at *4 (quoting *Prod. Fabricators, Inc. v. CIT Commc'ns Fin. Corp.*, No. CIV 06-537 RHK/RLE, 2006 WL 2085413, at *4 (D. Minn. July 25, 2006) (quoting 17 Moore's Federal Practice § 111.13[1][c])); see also C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3849 (4th ed.) (noting that courts frequently transfer cases where the plaintiff has filed in its home state if other factors outweigh the convenience to the plaintiff). As before, although Green Plains alleges ADM's price manipulation caused financial harm to Green Plains in Nebraska, ADM's alleged misconduct, i.e., the 'operative events,' took place in Central District of Illinois. Under these circumstances, Green Plains' choice of forum, while given more weight than previously, remains outweighed by judicial economy and consistency. See *Green Plains*, 2020 WL 6544289, at *4. Although Green Plains' complaint no longer contains a putative class action, the interests of justice and judicial economy on the whole nevertheless still weigh in favor of transfer.

Nebraska is still the more convenient forum for Green Plains. Green Plains' headquarters are in Nebraska and Green Plains operates in Nebraska. Many of Green Plains' witnesses also are in Nebraska. But Green Plains also conducts business and produces ethanol in several other states, including Illinois. See also *Sirius Computer Sols., Inc. v. Evans*, No. 8:11CV439, 2012 WL 13055016, at *10 (D. Neb. Apr. 23, 2012) (providing less deference to the plaintiff's choice in forum because the plaintiff conducted business in the transferee court's state). Here as before, some of Green Plains' counsel is from Chicago, Illinois. Additionally, ADM's witnesses, most of the relevant records, and other evidence are in the Central District of Illinois. See *id.* (concluding that, despite the ability to transmit documents electronically, transfer was warranted in part because none of the documents to be used as evidence were in Nebraska). And, as stated previously, many of the same witnesses and much of the same discovery will be relevant in this action as well as the

7

ongoing putative class actions in the Central District of Illinois. *Green*, 2020 WL 6544289 at *5. In fact, there has already been discovery between these parties in Illinois. Thus, it remains true that it would be more convenient and more efficient to conduct discovery in a single forum.

In sum, although Nebraska may be more convenient for Green Plains and even though this may weigh more heavily in the absence of the prior class action claims, Green Plains' convenience remains outweighed by the convenience of the other witnesses and by judicial economy and consistency. Further, the inconvenience to Green Plains in transferring venue to the Central District of Illinois is reduced here by the fact that Green Plains operates part of its business in Illinois and its counsel is partly in Illinois.

For the foregoing reasons, and after balancing the case-specific factors relevant to convenience and justice, the Court finds that ADM has met its burden to show that this case should be transferred to the Central District of Illinois pursuant to § 1404(a).

Upon consideration,

**IT IS ORDERED**:

1. Defendant's the Motion to Transfer Venue of Plaintiffs' Complaint Under 28 U.S.C. § 1404(a) (Filing No. 74) is granted;
2. The case shall be transferred to the United States District Court, Central District of Illinois;
3. If no party files an objection to this Order on or before **April 1, 2022**, the Clerk of the Court shall take every action needed to accomplish the transfer and to terminate this case for statistical purposes. Failure to timely object may constitute a waiver of any objection to this Order. See NECivR 72.2.

Dated this 18th day of March, 2022.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge